UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
NEW YORK COMMUNITY BANK,

       Plaintiff,        18-cv-3987 (PKC)

  -against-          FINDINGS OF FACT AND
                 CONCLUSIONS OF LAW

ESTATE OF GEORGE E. PARASKEVAIDES,
et al.,

       Defendants.
-------------------------------------------------------------x

CASTEL, U.S.D.J.

    Plaintiff New York Community Bank ("NYCB") brings three breach of contract claims against defendants the Estate of George E. Paraskevaides (the "Estate"), Christina G. Paraskevaides, Charis C. Lapas, Lapas L.C., Efthyvoulos Paraskevaides, Leoni Paraskevaidou-Mavronicola, and Blazec Enterprises Limited ("Blazec"). Lapas asserts two counterclaims against NYCB for breach of contract. These are the Court's findings of fact and conclusions of law after a bench trial of the claims. Fed. R. Civ. P. 52(a)(1).[1]

FINDINGS OF FACT

I.  The Loan Agreement and the Guaranty

    1.  In January 2003, non-party Heritage Green Development, LLC ("Heritage Green" or the "Borrower") purchased 1,031 acres of vacant land in La Plata Charles County, Maryland (the "Property"). (Delfoe Decl. ¶ 2; PX Y ¶ 15; PX Z ¶ 15; PX AA ¶ 15).

---

[1] The citation to any evidence is intended to be illustrative and is not necessarily the sole evidentiary support for a finding. Any finding of fact improperly designated as a conclusion of law or vice versa should be considered under the proper designation.

2. Heritage Green obtained financing from the Davis Corporation to purchase the Property by executing a Purchase Money Deed of Trust Note, dated January 9, 2003, payable to the Davis Corporation in the principal amount of $8,250,000.00 (the "Original Loan"). (PX A; Delfoe Decl. ¶¶ 3-4).

3. On July 7, 2004, the Davis Corporation assigned the Original Loan to Atlantic Bank of New York ("Atlantic Bank"). (PX C; Delfoe Decl. ¶ 5).

4. On July 7, 2004, Heritage Green entered into an Amended and Restated Revolving Credit Line Deed of Trust Note with Atlantic Bank (the "Loan Agreement"). (PX B; PX T at Resp. No. 1; PX U at Resp. No. 1; Delfoe Decl. ¶ 6).

5. The Loan Agreement provided for a maximum principal amount of $33,000,000.00 and originally provided for a maturity date of July 7, 2009. (PX B; Delfoe Decl. ¶ 7).

6. Defendants Charis C. Lapas, Lapas L.C., Christina G. Paraskevaides, Efthyvoulos Paraskevaides, Leoni Paraskevaidou-Mavronicola, and George E. Paraskevaides executed a Guaranty of Payment (the "Guaranty") on July 7, 2004, thereby becoming Guarantors of the loan underlying the Loan Agreement. (PX G; PX H § 24; Doc. 110 at 3; PX T at Resp. No. 3; PX U at Resp. No. 2; PX AB ¶¶ 6-7; Delfoe Decl. ¶ 8). Blazec later executed a Guaranty of Payment on July 7, 2009 and also became a Guarantor. (PX H at 1; PX AB ¶ 14; Delfoe Decl. ¶ 16)

7. On February 9, 2006, NYCB entered into an Acquisition and Assumption Agreement with Atlantic Bank, wherein NYCB became Atlantic Bank's successor-in-interest and Atlantic Bank transferred all of its assets and liabilities to NYCB. (PX D; PX E; Delfoe Decl. ¶ 15).

8. Section 1 of the Guaranty provides that each of the Guarantors "unconditionally guarantees the punctual payment when due, whether at stated maturity, by acceleration or otherwise, of all liabilities, obligations and indebtedness of the Borrower to the Bank now existing or hereafter arising under the [Loan Agreement] . . . whether for principal, interest, fees, . . . expenses or otherwise, and any and all expenses (including reasonable counsel fees and expenses) incurred by the Bank in enforcing any rights under this Guaranty." (PX G § 1).

9. Section 6(d) of the Guaranty required certain Guarantors to provide financial information to NYCB as follows:

> i. within ninety (90) days after the close of each calendar year personal financial statements for Charis C. Lapas, George E. Paraskevaides, . . . and Lapas L.C. in form acceptable to the Bank together with all supporting documentation including, without limitation, confirmation of liquidity and financial statements regarding all real estate investments.
>
> ii. within thirty (30) days after filing, tax returns for the preceding calendar year but only for Charis C. Lapas . . . and Lapas L.C.
>
> iii. within fifteen (15) days after request by the Bank, such other information with respect to the financial condition or operations of each Guarantor as the bank may from time to time reasonably request.
>
> All financial statements of the Guarantor shall be accompanied by a letter signed by such Guarantor certifying that the Guarantor has not failed to observe or perform any of the terms or provisions of this Guaranty and that since the date of the last financial statement there has been no material adverse change in the financial condition of the Guarantor.

(PX G § 6(d)).

10. Section 10 of the Guaranty governed "Events of Default," which included non-payment of any obligation under the Loan Agreement, any petition in bankruptcy filed by or

against Heritage Green and not dismissed within forty-five days, and any failure of a Guarantor to observe or perform any term or provision of the Guaranty that is not cured within an applicable grace period. (PX G § 10).

11. The Guarantors' liability was "joint and several" under the Guaranty. (PX G § 17).

II. The Confirmation of Guaranty

12. On February 25, 2010, each of the defendants executed the Confirmation of Guaranty and Environmental Indemnity (the "Confirmation"). (PX H; Delfoe Decl. ¶ 17). NYCB is the counterparty to the Confirmation. (PX H; Delfoe Decl. ¶ 18).

13. Section 2(d) of the Confirmation confirms that each Guarantor "remain[s] liable for all the obligations of . . . [a] 'Guarantor' under the [Guaranty]." (PX H § 2(d)).

14. Section 5 of the Confirmation ratified and confirmed the Guaranty and all of the "Guarantors' representations, warranties, covenants and obligations thereunder in their entirety." (PX H § 5).

15. In particular, the Guarantors confirmed their unconditional guarantee to make "timely and full payment and repayment" of (1) "all obligations of [Heritage Green] under [the Loan Agreement]," including the entire principal balance thereof, any and all accrued and unpaid interest, interest at any default or involuntary rates, late charges, and any other amounts as may be provided in the Loan Agreement and the Guaranty; and (2) "all costs and expenses of and advances by [NYCB] (including, without limitation, attorneys' fees and disbursements) in enforcing the Loan [Agreement] and [Guaranty] and Borrower's and Guarantors' obligations thereunder . . . together with interest thereon at any such default or involuntary rates[.]" (PX H §

5(b)(i)).

16. Section 6(iii) of the Confirmation provides that if the Borrower fails to make payment at the maturity date, an "Event of Default" may be declared under the Guaranty once NYCB provided written notice to the Guarantors and the Guarantors failed to cure the default "on or before fifteen (15) days after the giving of such written notice." (PX H § 6(iii)).

17. The Confirmation further provides that, "[e]xcept as modified hereby, the [Guaranty] . . . remain[s] unmodified and in full force and effect." (PX H § 9).

18. Section 19 of the Confirmation states that the Guarantors would "irrevocably designate George P. Yeonas, Esq. . . . as Guarantors' authorized agent to receive and accept any notice or legal process from [NYCB]. . . . If [Mr. Yeonas] shall die, become incapacitated, retire or resign, the Guarantors agree immediately to secure a substitute agent reasonably acceptable to [NYCB]. Any default by Guarantors in the obligation set forth in this Section 19 shall constitute an additional Event of Default under the Guaranty." (PX H § 19).

III. The Loan Agreement Matures and Heritage Green Defaults

19. The Loan Agreement's maturity date was extended by agreement multiple times, with the last extension setting a maturity date of July 1, 2016. (PX I; PX T at Resp. No. 7; PX U at Resp. No. 7; PX Y ¶ 33; PX Z ¶ 33; PX AA ¶ 33; Delfoe Decl. ¶ 26).

20. On July 1, 2016, the Loan Agreement matured and all outstanding principal and interest became due and payable. (PX I; PX J; PX T at Resp. No. 8; PX U at Resp. No. 8; Delfoe Decl. ¶¶ 28, 54).

21. As of July 1, 2016, the outstanding principal owing on the Loan Agreement and under the Guaranty was $15,500,000.00, exclusive of interest and costs. (Delfoe

Decl. ¶ 55; PX J; PX M; PX N).

22. Despite the Loan Agreement's maturity, the Borrower did not make a payment on the loan balance between July 1, 2016 and September 2, 2016. (PX J; Delfoe Decl. ¶ 29).

23. On September 2, 2016, NYCB declared an Event of Default under the Loan Agreement. (Delfoe Decl. ¶ 30; PX J).

24. On the same day, NYCB sent a letter to the Guarantors and their authorized agent under the Confirmation, demanding payment of $15,500,000.00, the principal amount then owing on the loan, and accrued interest. (PX J; Delfoe Decl. ¶ 31).

25. On April 20, 2017 and March 30, 2018, NYCB sent additional demand letters to the Guarantors through their authorized agent, demanding the payment of the $15,500,000.00, plus any accrued interest, fees, expenses, late charges, and all other amounts provided in the Loan Agreement, Guaranty, and Confirmation. (See PX K; PX O; Delfoe Decl. ¶ 33).

IV. No Payments Are Made by the Guarantors and
    Heritage Green Files for Bankruptcy

26. The Guarantors have not made any payment on the loan balance to NYCB. (PX T at Resp. Nos. 26-27; PX U at Resp. Nos. 25-26; Delfoe Decl. ¶¶ 32, 34, 59; see also PX O; PX K).

27. On September 27, 2017, Heritage Green commenced Chapter 11 proceedings in the United States Bankruptcy Court for the Southern District of New York, under the case caption In re Heritage Green Development, L.L.C., Case No. 17-12701-mew. (PX L; PX T at Resp. No. 14; PX U at Resp. No. 14). At this time, the outstanding principal due from

defendants under the Loan Agreement, Guaranty, and Confirmation remained $15,500,000.00, exclusive of interests and costs. (PX N; PX Y ¶ 38; PX Z ¶ 38).

28. On February 22, 2018, with the approval of the Bankruptcy Court, the Property was auctioned and sold for $9,950,000.00. (PX N). NYCB has received $9,844,530.00 of the sale proceeds. (Delfoe Decl. ¶ 61; PX Q; PX R; PX S).

29. Thus, the remaining unpaid principal due under the Loan Agreement as of the date of these Findings of Fact and Conclusions of Law, is $15,500,000.00 less $9,844,530.00, which is $5,655,470.00.

## V. Mr. Yeonas Resigns as Authorized Agent and Certain Defendants Fail to Provide Requested Financial Information to NYCB

30. On April 16, 2018, Mr. Yeonas resigned as authorized agent to receive legal notice or process from NYCB on behalf of the Guarantors. (PX W; PX T at Resp. No. 28; PX U at Resp. No. 27).

31. On April 27, 2018, NYCB sent a letter to the Guarantors demanding the designation of a new agent for service of process as required by Section 19 of the Confirmation. (PX P; PX T at Resp. No. 29; PX U at Resp. No. 28).

32. In that same letter, NYCB also demanded that Charis C. Lapas, Lapas L.C., and the Estate provide the financial information required by Section 6(d) of the Guaranty. (PX P).

33. The Guarantors have not designated a new agent for service of process or provided the requested financial information. (PX T Resp. Nos. 30-34; PX U at Resp. No. 29; Delfoe Decl. ¶¶ 41-44).

34. Lisa Delfoe testified that the purpose of the provision in Section 19 of the

Confirmation, requiring the appointment of a replacement agent for service of process, and the provision in Section 6(d) of the Guaranty, requiring certain defendants to provide financial information, was "to make it easier to collect" the amount due under the Loan Agreement. (Tr. 21).

VI. NYCB Denies Charis Lapas's Request to Be Released
Pursuant to Section 17 of the Confirmation

35. Section 17 of the Confirmation provides, in part, "that at such time as an amended and restated operating agreement for the Borrower has been entered into by the parties to the existing operating agreement of the Borrower, [NYCB] shall, within a reasonable time thereafter in no event exceeding ten (10) business days, deliver a written release to Charis C. Lapas (but not Lapas, L.C.) which shall release him from any liability under the [Guaranty] . . . ." (PX H § 17).

36. Charis C. Lapas is the manager of the Borrower, Heritage Green. (Lapas Decl. ¶ 1).

37. On June 7, 2018, Charis C. Lapas wrote to NYCB claiming that the Borrower's existing operating agreement had been amended on February 23, 2018 and requesting that NYCB return an executed copy of the "Release of Charis C. Lapas from Guaranty," which was appended as "Exhibit A" to the Confirmation (the "Release Form"). (DX 19).

38. NYCB refused to execute the Release Form. (DX 20).

CONCLUSIONS OF LAW

39. NYCB commenced this action on May 3, 2018, asserting three causes of action for breach of contract. (Doc. 1).

40. First, NYCB asserted a breach of contract claim against each defendant seeking recovery of money damages for an amount in principal and interest due and owing under the Loan Agreement, Guaranty, and Confirmation as well as additional amounts incurred in enforcing the Guaranty and Confirmation, including reasonable attorneys' fees. (Id. at 10).

41. Second, NYCB asserted a breach of contract claim against Charis C. Lapas, Lapas L.C., and the Estate for failing to provide to NYCB the financial information described in Section 6(d) of the Guaranty. (Id. at 10-11).

42. Third, NYCB asserted a breach of contract claim against all defendants for failing to designate a new agent for service of process after the resignation of George P. Yeonas on April 16, 2018, as required in Section 19 of the Confirmation. (Id. at 11).

43. The Guaranty and the Confirmation are both governed by New York law and both provide that "[e]ach Guarantor . . . submits to the jurisdiction of the courts of the State of New York and The United States District Court for the Southern and Eastern District[s] of New York . . . for the purpose of any suit, action or other proceeding" arising out of any Guarantor's obligations under the Guaranty or Confirmation. (PX G §§ 13, 19; PX H §§ 21, 23).

44. The parties briefed all claims under New York law, and such "implied consent . . . is sufficient to establish choice of law." See Krumme v. WestPoint Stevens Inc., 238 F.3d 133, 138 (2d Cir. 2000) (omission in original) (quoting Tehran-Berkeley Civil & Envtl. Engineers v. Tippetts-Abbett-McCarthy-Stratton, 888 F.2d 239, 242 (2d Cir. 1989)).

I.      NYCB's Breach of Contract Claims

   a.   Count I: NYCB Is Entitled to Judgment and Damages Based on
        Defendants' Breach of the Guaranty and Confirmation

45.     To recover for breach of contract under New York law, "a plaintiff must prove, by a preponderance of the evidence, (1) the existence of a contract between itself and that defendant; (2) performance of the plaintiff's obligations under the contract; (3) breach of the contract by that defendant; and (4) damages to the plaintiff caused by that defendant's breach." Diesel Props S.r.l. v. Greystone Bus. Credit II LLC, 631 F.3d 42, 52 (2d Cir. 2011).

46.     The Guaranty and the Confirmation are valid and binding contracts between NYCB and the defendants.

47.     The defendants breached the Guaranty and Confirmation by failing to make any payments to NYCB since the Loan Agreement matured. (PX T at Resp. Nos. 26-27; PX U at Resp. Nos. 25-26); Wechsler v. Hunt Health Sys., Ltd., 330 F. Supp. 2d 383, 403 (S.D.N.Y. 2004) ("Non-performance of a contractual duty is a breach.").

48.     "Under New York law, for a breach of a contract to be material, it must go to the root of the agreement between the parties." Frank Felix Assocs., Ltd. v. Austin Drugs, Inc., 111 F.3d 284, 289 (2d Cir. 1997) (internal quotations omitted); see also Times Mirror Magazines, Inc. v. Field & Stream Licenses Co., 103 F. Supp. 2d 711, 731 (S.D.N.Y. 2000) ("[A] breach is material if it defeats the object of the parties in making the contract and deprive[s] the injured party of the benefit that it justifiably expected." (internal quotation marks omitted)).

49.     The defendants' breach of the Guaranty and Confirmation was material because, by failing to make payments, the defendants deprived NYCB of the benefit of its

bargain, namely, repayment of the subject loan.  See ARP Films, Inc. v. Marvel Entm't Grp., Inc., 952 F.2d 643, 649 (2d Cir. 1991) ("Failure to tender payment is generally deemed a material breach of a contract."); Jafari v. Wally Findlay Galleries, 741 F. Supp. 64, 67 (S.D.N.Y. 1990) ("The failure to tender payment is a material breach of a contract.")

71. NYCB suffered damages as a result of defendants' breach in the total amount of $5,655,470.00 (the remaining unpaid principal) plus any interest accrued prior to the entry of judgment in this matter.

72. The Court awards NYCB $5,655,470.00 plus interest accrued prior to the entry of judgment.

73. Pursuant to the Guaranty and Confirmation, NYCB is also entitled to reasonable costs and expenses, including reasonable attorneys' fees, incurred in connection with its enforcement of the Guaranty and Confirmation.  (See PX G § 1; PX H § 5(b)(i)).

b. Counts II and III: NYCB is Not Entitled to Specific Performance

74. Defendants Charis C. Lapas, Lapas L.C., and the Estate breached the Guaranty and Confirmation by failing to provide requested financial information to NYCB as required by Section 6(d) of the Guaranty.  (See PX G § 6(d); PX H § 9; PX T at Resp. Nos. 31-34; Delfoe Decl. ¶¶ 41-43.).

75. All defendants breached the Confirmation by failing to appoint a new agent for service of process when Mr. Yeonas resigned as defendants' authorized agent on April 16, 2018, as required by Section 19 of the Confirmation.  (PX W; PX H § 19; Delfoe Decl. ¶ 44).

76. NYCB seeks an order of specific performance, compelling defendants to comply with Section 19 of the Confirmation by appointing a substitute agent for service of

process and compelling Charis C. Lapas, Lapas L.C., and the Estate to comply with their obligations under Section 6(d) of the Guaranty by providing NYCB with the requisite financial information for the last three years. (Doc. 1).

77. "In general, specific performance is appropriate when money damages would be inadequate to protect the expectation interest of the injured party and when performance will not impose a disproportionate or inequitable burden on the breaching party." Cho v. 401-403 57th St. Realty Corp., 300 A.D.2d 174, 175 (1st Dep't 2002) (internal citations and quotation marks omitted); see also Versatile Housewares & Gardening Sys. Inc. v. Thill Logistics, Inc., 819 F. Supp. 2d 230, 241 (S.D.N.Y. 2011) ("Specific performance will not be ordered where money damages would be adequate to protect the expectation interest of the injured party, but it will be ordered when such damages would not be an 'adequate remedy' for the non-breaching party, as in cases in which damages will be difficult to prove with certainty, damages would not allow the procurement of substitute performance, or the contract involves unique goods or services." (internal quotation marks omitted)); Deutsche Bank Nat'l Trust Co. v. Morgan Stanley Mortg. Capital Holdings LLC, 289 F. Supp. 3d 484, 495 (S.D.N.Y. 2018) ("In determining whether money damages would be an adequate remedy, a trial court must consider, among other factors, the difficulty of proving damages with reasonable certainty and of procuring a suitable substitute performance with a damages award.").

78. Specific performance is not appropriate here because, as Lisa Delfoe testified, (Tr. 21), the purpose of both Section 19, requiring the disclosure of financial statements, and Section 6(d), requiring the appointment of a replacement agent, was "to make it easier to collect" from defendants the amount due to NYCB under the Loan Agreement. As such, an award of money damages equal to the amount due to NYCB under the Loan Agreement

"would be adequate to protect the expectation interest of [NYCB]." See Versatile Housewares, 819 F. Supp. 2d at 241.

79. The Court accordingly denies NYCB's requests for specific performance.

II. Charis Lapas's Counterclaims

80. On August 15, 2018, Charis C. Lapas filed his Answer to NYCB's Complaint and asserted two counterclaims against NYCB based on NYCB's refusal to release him from his obligations under the Guaranty and Confirmation following a purported amendment to Heritage Green's operating agreement on February 23, 2018. (PX Y).

81. His first counterclaim seeks a declaratory judgment, pursuant to 28 U.S.C. §§ 2201-2202, that pursuant to Section 17 of the Confirmation, Lapas is entitled to receive an executed Release Form from NYCB, releasing him from his obligations under the Guaranty and Confirmation. (PX Y ¶¶ 13-18).

82. His second counterclaim alleges that NYCB breached the Confirmation by refusing to execute the Release Form and seeks an order of specific performance compelling NYCB to execute and deliver the Release Form. (PX Y ¶¶ 19-28).

83. "A fundamental principal of contract law provides that the material breach of a contract by one party discharges the contractual obligations of the non-breaching party." Bear, Stearns Funding, Inc. v. Interface Group-Nevada, Inc., 361 F. Supp. 2d 283, 291 (S.D.N.Y. 2005); see also Dep't of Economic Dev. v. Arthur Anderson & Co. (U.S.A.), 924 F. Supp. 449, 483 (S.D.N.Y. 1996) ("The non-breaching party will be discharged from the further performance of its obligations under the contract when the breach goes to the root of the contract." (internal quotation marks omitted)).

84. As discussed above, Lapas materially breached the Confirmation by failing to make payments due to NYCB after the Loan Agreement matured on July 1, 2016 and NYCB sent him a letter demanding payment on September 2, 2016. This material breach occurred over a year prior to the alleged amendment of the Borrower's operating agreement on February 23, 2018. Lapas's failure to make payments therefore "discharge[d] [NYCB] from further performance of its obligations under the [Confirmation]," including the obligation in Section 17 that NYCB execute the Release Form upon amendment of the Borrower's operating agreement. See Dep't of Economic Dev., 924 F. Supp. at 483.

85. In the same vein, Lapas cannot establish his counterclaim for breach of the Confirmation because performance by the aggrieved party is an element of a breach of contract claim, Diesel Props, 631 F.3d at 52, and Lapas did not perform his obligation under the Confirmation to make "timely and full payment and repayment of . . . all obligations of [Heritage Green] under [the Loan Agreement]," (PX H § 5(b)(i)).

86. Lapas urges the Court to consider the drafting history of Section 17 of the Confirmation and infer from that history that the parties intended for NYCB to execute the Release Form upon amendment of the Borrower's operating agreement regardless of whether Lapas performed his obligations under the Guaranty and Confirmation. After reviewing the Confirmation, the Court holds that Section 17 is an unambiguous contractual provision that must be interpreted according to its plain terms without regard to any drafting history. See W.W.W. Assocs. v. Giancontieri, 77 N.Y.2d 157, 162 (N.Y. 1990) ("Evidence outside the four corners of the document as to what was really intended but unstated or misstated is generally inadmissible to add to or vary the writing."); Omni Quartz v. CVS Corp., 287 F.3d 61, 64 (2d Cir. 2002) ("It is well established that a court may not admit extrinsic evidence in order to determine the

meaning of an unambiguous contract.").

87. In any case, Lapas has also failed to demonstrate by a preponderance of the evidence that the Borrower's operating agreement was ever properly amended. The document that Lapas submitted as the amendment, titled "First Amendment to the Amended and Restated Operating Agreement of Heritage Green Development LLC," is undated, stating only "February __, 2018," with a blank space instead of a number corresponding to the day of the month. (See DX 18). Moreover, the document purports to amend terms related to the distribution of losses and assets for a company that, by February 23, 2018, had ceased to operate, was in bankruptcy, had sold off its sole asset, and had no anticipated profits available for distribution.

88. The Court concludes that NYCB did not breach the Confirmation by declining to release Lapas from his obligations under the Guaranty and Confirmation and accordingly denies Lapas's requests for declaratory judgment and specific performance.

CONCLUSION

The Court concludes that defendants are jointly and severally liable to NYCB for the amount of $5,655,470.00 plus interest accrued up to the date of Final Judgment plus reasonable attorneys' fees and expenses. Within 7 days of this Order, NYCB shall file a proposed Final Judgment that includes the interest up to the date of Final Judgment. Any response to the proposed Final Judgment shall be filed within 3 days thereafter. NYCB's claims for specific performance are denied as are Lapas's claims for declaratory judgment and specific performance.

NYCB may move under Fed. R. Civ. P. 54(d)(2) for attorneys' fees and expenses by August 2, 2019. Defendants may respond within 21 days and NYCB may reply 14 days thereafter.

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
July 11, 2019